Case No. 24-12375

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**ROBERT F. KENNEDY, JR.,**

*Plaintiff-Appellant*,

v.

**JOCELYN BENSON, in her official capacity as Michigan Secretary of State,**

*Defendant-Appellee.*

On Appeal from the United States District Court for
the Eastern District of Michigan, Case No. 2:24-cv-12375
Hon. Denise Page Hood

**REPLY BRIEF OF APPELLANT ROBERT F. KENNEDY, JR.**

                                              DICKINSON WRIGHT PLLC
                                              Brandon L. Debus
                                              2600 West Big Beaver, Suite 300
                                              Troy, MI 48084
                                              (248) 433-7674
                                              *Attorneys for Appellant Robert F.*
                                              *Kennedy, Jr.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... 2

INTRODUCTION ................................................................................................... 3

I.     ARGUMENT ................................................................................................ 3

      A.     Mr. Kennedy has established a likelihood of success on the merits of his claims ............................................................................. 3

           1.     Res Judicata ............................................................................ 3

           2.     Laches ..................................................................................... 5

           3.     *Rooker-Feldman* Doctrine ........................................................ 7

           4.     Count I .................................................................................... 8

           5.     Count II .................................................................................. 9

           6.     Count III ................................................................................ 10

      B.     Mr. Kennedy has sufficiently established irreparable harm. ........... 12

      C.     The harms outweigh any public interest in this matter. ................... 13

CONCLUSION ..................................................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................................... 17

CERTIFICATE OF SERVICE ............................................................................. 18

# **TABLE OF AUTHORITIES**

**Cases**

*Ariz. Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016)............................10

*Dudum v. Arntz*, 640 F.3d 1098, 1114 n.27 (9th Cir. 2011)....................................10

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005).....................................................7

*G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 10710 (6th Cir. 1994)....................................................................................................13

*Gelineau v. Johnson*, 896 F. Supp.2d 680, 683-86 (2012) .....................................14

*Gralike v. Cook*, 191 F.3d 911, 917–18 (8th Cir. 1999)..........................................11

*Mich. Republican State Central Comm. V. Secretary of State*, 408 Mich. 931 (1980)..........................................................................................................4

*Soltysik v. Padilla*, 910 F.3d 438, 445 (9th Cir. 2018) ...........................................10

*Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533 (1989) ................................10

**Statutes**

MCL 168.641 ..............................................................................................................9

MCL 168.686a ............................................................................................................9

# INTRODUCTION

The Secretary had no legal authority to recertify the candidates to be listed on the ballot after the September 6, 2024 statutory deadline. No court – not even the Michigan Supreme Court, as claimed by the Secretary – issued any order permitting the Secretary to circumvent this statutory deadline. The Secretary, of her own accord, recertified the ballot with Mr. Kennedy's name included in order to advance her own political agenda. And that is why Mr. Kennedy was forced to file this action following the conclusion of the state court litigation. The Secretary nonchalantly asserts that Mr. Kennedy's constitutional rights are insignificant. The Secretary's brief advances a false narrative of fact and relies upon case law that is inapplicable to the instant matter, all of which is addressed below.

## I. ARGUMENT

### A. Mr. Kennedy has established a likelihood of success on the merits of his claims.

#### 1. Res Judicata

In support of her arguments that Mr. Kennedy's claims are barred by res judicata, the Secretary argues that this action was decided on the merits by the Michigan state courts and that the claims could have been raised and resolved in the state court action. *See* ECF 8 at 31-32. Such a contention is incorrect.

In the state court action, Mr. Kennedy did not raise any of the instant claims, as these claims were not yet ripe for consideration. Specifically, the issue in the

state court action concerned whether MCL 168.686a applied to presidential candidates at all or whether the purported absolute prohibition against withdrawal was proper in light of the Michigan Supreme Court's holding in *Mich. Republican State Central Comm. v. Secretary of State*, 408 Mich. 931 (1980). [ECF No. 1-4, Page ID. 33].[1]  It was not until September 9, 2024 when the Michigan Supreme Court held that MCL 168.686a applies to presidential candidates and that minor party candidates cannot withdraw after accepting their nominations that Mr. Kennedy's claims based upon the federal constitution accrued. Prior to September 9, 2024, there was no equal protection claim and Mr. Kennedy's speech was not being compelled because his name was not on Michigan's 2024 general election ballot. There was also no violation of Article II, Section I of the United States Constitution at that time because Secretary Benson had already certified a list of candidates that did *not* include the candidate (Mr. Kennedy) who is no longer running and, therefore, there was no risk of deceiving voters into casting their votes in an ineffective manner and undermining the integrity of our presidential election.  In other words, Secretary Benson's act of recertifying the ballot to

---

[1] Although the state court complaint included a compelled speech claim, said claim was under the Michigan Constitution.  This was an entirely different claim, as claims arising under the federal constitution and state constitution each have their own distinct elements.  Thus, the Michigan state courts did not rule on the merits of the compelled speech claim under the federal constitution, as was raised here.

include Mr. Kennedy's name as a candidate triggered the federal constitution claims.

Finally, the claims at issue in this federal litigation are based upon the effect of the Michigan Supreme Court's ruling and do not challenge the substance. Accepting the Michigan Supreme Court's interpretation of MCL 168.686a results in a discriminatory and unequal burden being placed on minority candidates. Mr. Kennedy is not challenging the Michigan Supreme Court's ruling per se; rather, he is challenging the constitutionality of Michigan's law in light of said ruling.

Therefore, Mr. Kennedy's claims are not barred by the doctrine of res judicata.

### 2. Laches

Secretary Benson relies on *Gelineau v. Johnson*, 896 F. Supp.2d 680, 683-86 (2012) for the proposition that when a plaintiff's delay prejudices the Secretary of State, the action should be barred by laches. *See* ECF 8 at 41. In *Gelineau*, the plaintiff filed the complaint on September 12, 2012, but the court recognized that "as early as May 3, 2012, Michigan's Secretary of State took the position that she would refuse to include Gary Johnson's name on the ballot as the Libertarian Party's candidate." *Gelineau*, 896 F. Supp.2d at 682. The four plus month delay in initiating litigation resulted in the plaintiff's claim being barred by laches.

Here, however, there is no delay and, assuming *arguendo* that any delay existed, it certainly did not amount to the four plus month delay at issue in *Gelineau*. Mr. Kennedy promptly filed his complaint in Michigan state court after the Secretary refused to accept his withdrawal. The purpose of the state court action was to determine if the Secretary had acted in accordance with MCL 168.686a. Once the Michigan Supreme Court determined that she had acted in accordance with Michigan law (despite being in violation of the United States Constitution), Mr. Kennedy had the information required to file a constitutional action in federal court, which he filed the very next day. As such, the Secretary's reliance on *Gelineau* is misplaced.

Further, it is notable that the Michigan Supreme Court did not order that the Secretary recertify the ballot with Mr. Kennedy's name included or that his name be included at all. Rather, the Michigan Supreme Court merely reversed the decision of the Court of Appeals. If Mr. Kennedy was not on the ballot when the clock struck midnight the morning of September 7, 2024, then he needed to remain off the ballot. The Secretary had no authority to recertify the ballot and include Mr. Kennedy's name after the September 6, 2024 statutory deadline.

In light of the forgoing, it is irrelevant that the ballots may have been printed by various counties. The ballots were sent to print with Mr. Kennedy's name listed despite the fact that the Secretary knew—well in advance of the September 6, 2024

certification deadline—that Mr. Kennedy was no longer running for president in Michigan and <u>after</u> she certified the ballot on September 6 without his name. The mere fact that Mr. Kennedy's claim may be inconvenient to the Secretary—who ordered the printing of ballots two weeks after becoming aware of Mr. Kennedy's withdrawal from the race and after the statutory deadline to do so—is of no consequence as to whether either of the aforementioned elements of laches have been established. Finally, and significantly, because the Secretary unlawfully recertified the ballot to include Mr. Kennedy's name, she acted with unclean hands and is barred from asserting laches as a defense in this matter.

### 3. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine prevents lower federal courts from hearing direct appeals from state court decisions. *See, e.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005). That is not what is transpiring here.

As explained above, Mr. Kennedy is not challenging or appealing the Michigan Supreme Court's decision. Rather, the Michigan Supreme Court's decision has created a constitutional conflict between state election laws as applied to major and minor party candidates. For the purposes of this case and appeal, Mr. Kennedy is not arguing that the Michigan Supreme Court's decision must be

reversed. He is, however, arguing that the decision provides an interpretation of Michigan law that violates the federal constitution.

Therefore, Mr. Kennedy's claims are not barred by the *Rooker-Feldman* doctrine.

### 4. Count I

In Count I, Mr. Kennedy alleges that his rights under Article II, Section I of the United States Constitution have been violated. The Secretary argues that, because Mr. Kennedy obtained ballot access here, *Anderson v. Celebrezze*, 460 U.S. 780 (1983) does not apply. *See* ECF 8 at 51-52. The Secretary, however, is mistaken. Because ballot access and withdrawal are two sides of the same coin, so to speak, *Anderson* is directly applicable here.

Political gamesmanship seeking to have unwitting Michigan voters waste their votes on a withdrawn presidential candidate is not permissible under *Anderson.* It is an affront to the Constitutional requirement to elect a President under Article II, Section I, as amended, to knowingly include the name of an individual who is not seeking that office. By recertifying a new list of candidates after the September 6, 2024 deadline, the Secretary violated Michigan law and, therefore, violated Mr. Kennedy's constitutional rights.[2]

---

[2] The Secretary's argument with respect to "sore loser" and disaffiliation statutes is irrelevant. While states may regulate elections, such regulations are limited by federal and state law. *See, e.g., Anderson*, *supra*.

### 5. Count II

The Secretary's argument rests on the contention that MCL 168.686a imposes a "reasonable, nondiscriminatory restriction" on candidates. ECF 8 at 56. In support of this viewpoint, the Secretary distinguishes the fact that President Biden withdrew in advance of the Michigan Democratic Party's convention. *See id*. This is irrelevant and misses the point. The fact that President Biden was permitted to withdraw an entire month after the nomination deadline for minor party candidates the discriminatory treatment under the law.[3] The laws should be applied equally to both major and minor party candidates. If President Biden was permitted to withdraw at a time that Mr. Kennedy was not granted that right, then Mr. Kennedy has a valid equal protection claim. There is no justifiable reason for such discrimination.

---

[3] Minor party candidates, like Mr. Kennedy, are limited in their rights to withdraw as candidates, while Democrats and Republicans have a greater opportunity to withdraw because minor party candidates must accept their nominations on or before the date of Michigan's presidential primary (i.e., August 6, 2024). *See* MCL 168.686a; MCL 168.641. Major party candidates are free to submit themselves to primary voting, determine the results of that voting, test their candidates on the public stage via nationally televised presidential debates and then, if they determine that their candidate is unfit or unlikely to win in the general election, withdraw their candidates and nominate anew long after the minor party candidates reached the point of no return. Indeed, that is precisely what happened with President Biden which clearly demonstrates the unequal burden placed upon, as well as the outright discrimination against, minor party candidates under Michigan statutory scheme – i.e., MCL 168.686 and MCL 168.686a.

Assuming *arguendo* that "the burden here 'is not severe enough to warrant strict scrutiny review,' it nonetheless 'is serious enough to require an assessment of whether alternative methods would advance the proffered governmental interests.'" *Soltysik v. Padilla*, 910 F.3d 438, 445 (9th Cir. 2018), *quoting Dudum v. Arntz*, 640 F.3d 1098, 1114 n.27 (9th Cir. 2011); *Ariz. Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016) (observing that the analysis looks for "means-end fit"). Here, the Secretary is unable to articulate how preventing a minor party candidate from withdrawing advances any state interest. To the contrary, Mr. Kennedy's withdrawal actually furthered the State's claimed interest because it would have ensured – absent the Secretary's unreasonable application of Michigan's election regulations – an accurate list of candidates and a process free from legal technicalities that disenfranchise voters, advantage the major party duopoly, and needlessly denies the electorate a choice between persons who are actual candidates willing to serve if elected.

### 6. Count III

The Secretary contends that placing Mr. Kennedy's name on the ballot does not constitute "speech;" however, she fails to consider that the First Amendment protects both speech and expressive conduct. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 2539 (1989).

Courts have applied ballot content to compelled speech. In *Gralike v. Cook*, the Eighth Circuit considered the constitutionality of an initiative amending the Missouri Constitution to require that any failure of any candidate for U.S. Senate or Congress to support the term limit provision be noted on the ballot. In finding that such a requirement amounted to compelled speech, the Eight Circuit, which was affirmed by the Supreme Court of the United States, explained as follows:

> The Missouri Amendment compels candidates to speak about term limits. First, it attempts to force candidates to speak in favor of term limits by threatening them with the ballot label if they fail to do so. Second, if a candidate refuses to speak in favor of term limits, the label on the ballot forces him or her to speak in opposition to the Amendment by noting that he or she failed to follow the voters' wishes. Either way, the Missouri Amendment does not allow candidates to remain silent on the issue, which is precisely the type of state-compelled speech which violates the First Amendment right not to speak. First, the Missouri Amendment selects the topic for public debate: term limits. Second, it chooses an approved position: favoring term limits. Third, it provides the actual words which non-incumbent candidates shall speak: the pledge. Finally, in the event its attempts to compel speech in favor of term limits fail, the Missouri Amendment provides a mechanism to compel candidates to speak in opposition: the ballot labels.

*Gralike v. Cook*, 191 F.3d 911, 917–18 (8th Cir. 1999), *aff'd*, 531 U.S. 510, 121 S. Ct. 1029, 149 L. Ed. 2d 44 (2001).

Here, it is clear that the act of withdrawing conveys the message that a candidate is no longer willing (or able) to hold a particular office if elected. Any

11

reasonable person understood Mr. Kennedy's August 23, 2024 speech to convey his decision to suspend his presidential campaign. Simply because no court has expressly determined whether compelling a candidate's name to appear on the ballot, without more, amounts to compelled speech, does not mean that this Court should shy away from such an important constitutional issue and question.

### B. Mr. Kennedy has sufficiently established irreparable harm.

In her brief, the Secretary boldly asserts that "[t]he only irreparable harm Kennedy claims is injury to his constitutional rights" and contends that this is insignificant. (ECF 8 at 69). But violating an individual's constitutional rights has been continuously found to constitute irreparable harm. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 2690, 49 L.Ed2d 547 (1976), *citing New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

Moreover, Mr. Kennedy will suffer reputational harm, as his supporters will be left confused and potentially angry should they later learn that a vote cast for Mr. Kennedy in Michigan was an invalid, wasted vote. To the extent that the Secretary argues that Mr. Kennedy "fails to address the district court's observation

that Kennedy was also likely to suffer the same "reputational harm" as a result of withdrawal," (ECF 8 at 70), such an issue is a red herring. The question here is not whether Mr. Kennedy's own actions will impact his reputation; it is whether the state government is permitted to compel Mr. Kennedy to act in such a manner that would adversely impact his reputation against his will. It is not.

Finally, the Secretary claims that the harm to voters is "speculative" (ECF 8 at 70). Such a contention is false. If there is harm to the Natural Law Party, then there must also be harm to individual voters because the party's interest necessarily relies upon voters unwittingly casting their votes for the Natural Law Party's candidate (i.e., Mr. Kennedy) which they obviously would not do had they known Mr. Kennedy is no longer running in Michigan. The Court should not tolerate a position that elevates unsubstantiated political party interests over interests of the electorate. *See G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 10710, 1079 (6th Cir. 1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights.").

Clearly, Mr. Kennedy has sufficiently established irreparable harm.

**C.     The harms outweigh any public interest in this matter.**

The Secretary seemingly argues that preventing minor party presidential candidates from withdrawing from the ballot serves an "important governmental interest relating to ballot integrity and election administration." (ECF 8 at 71).

13

But she never specifically identifies the governmental interest. Instead, she generally relies upon the fact that states have an interest in regulating elections. (ECF 8 at 71-72). That does not address the reason why a state would have an interest in preventing someone from withdrawing from the ballot or differentiating, for purposes of withdrawal, between major and minor party candidates. Notably, her concern with "ballot integrity" is seemingly spurious given that the Secretary herself is the one who recertified a ballot to make it inaccurate and misleading to voters.

Moreover, the Secretary relies on *Gelineau v. Johnson*, 896 F. Supp.2d 680, 683-86 (2012) for the proposition that a court should deny a preliminary injunction where the secretary would be prejudiced. *See* ECF 8 at 72-73. In *Gelineau*, however, the plaintiffs sought an order preventing the secretary from printing the ballots unless the candidate's name was listed on the ballot as a candidate for President. *See Gelineau*, 896 F. Supp.2d at 681. The Court found "that Plaintiffs have failed to exercise proper diligence in asserting their claims and that this failure has prejudiced the Secretary." *Id*. Contrary to the Secretary's assertion that *Gelineau* was decided on the basis of public interest outweighing the harm to the plaintiffs, the case was decided based on the doctrine of laches. *See id.* at 686 ("Even assuming that the other three factors—irreparable injury, substantial harm to others, and the public interest—favor injunctive relief, the fact that Plaintiffs'

claims are barred [by laches] is dispositive here."). As explained above, laches is not applicable here.

Finally, Secretary Benson cannot cry foul over re-printing ballots when she illegally recertified after the deadline, which caused the improper ballots to be printed in the first place. In fact, the Secretary, by listing Mr. Kennedy on the ballot, is misrepresenting to voters that he is qualified and willing to serve the public if elected. Such a representation is not only incorrect, but it is also prejudicial to voters who reasonably expect that the ballot contain accurate information. As the United States Supreme Court correctly noted in *Anderson v. Celebrezze*, "one of our most precious freedoms" includes "the right of qualified voters, regardless of their political persuasion, to cast their votes ***effectively***." 460 U.S. at 780 (emphasis added). The Secretary's argument contravenes this right and, as such, is without merit.

## **CONCLUSION**

For all of these reasons, Mr. Kennedy requests that the Court reverse the District Court's denial of his Motion for Preliminary Injunction and remand for entry of judgment in Mr. Kennedy's favor.

                                            Respectfully submitted,

                                            DICKINSON WRIGHT PLLC

                                            /s/ *Brandon L. Debus*
                                            Brandon L. Debus
                                            2600 West Big Beaver, Suite 300
                                            Troy, MI 48084
                                            (248) 433-7674
                                            *Attorneys for Appellant Robert F. Kennedy, Jr.*

Date: September 27, 2024

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,102 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Brandon L. Debus*
Brandon L. Debus
*Attorney for Appellant Robert F. Kennedy, Jr.*

Dated:  September 27, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to registered users. A courtesy copy was also sent to counsel for Secretary Benson via email to her counsel of record.

/s/ *Brandon L. Debus*
Brandon L. Debus

18