No. 24-1799

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT F. KENNEDY, JR.,

     Plaintiff-Appellant,

v.

JOCELYN BENSON, in her official capacity as Michigan Secretary of State,

     Defendant-Appellee.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Denise Page Hood

## SECRETARY OF STATE JOCELYN BENSON'S RESPONSE TO PLAINTIFF'S PETITION FOR REHEARING EN BANC

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendant-Appellee
Civil Rights and Elections Division
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659

Dated: October 10, 2024

# TABLE OF CONTENTS

<u>Page</u>

Table of Authorities....................................................................................ii

Introduction...............................................................................................1

Argument....................................................................................................3

I.      The petition for rehearing en banc should be denied where
        the panel did not err in affirming the denial of Kennedy's
        motion for a preliminary injunction. ................................................3

        A.      The panel did not misapply any precedent in
                concluding that Kennedy was unlikely to succeed on
                the merits of his claims where his claims were barred
                by the doctrine of res judicata...................................................3

        B.      The panel's conclusion that Kennedy was unlikely to
                succeed on the merits of his claims did not create any
                issues of exceptional importance because it did not
                violate state law. ....................................................................7

        C.      The panel correctly weighed the remaining injunction
                factors, all of which weighed heavily in favor of the
                State, and Kennedy does not argue to the contrary............15

Conclusion and Relief Requested...........................................................19

Certificate of Compliance.......................................................................20

Certificate of Service .............................................................................21

# TABLE OF AUTHORITIES

Page

**Cases**

*Adair v. State*, 680 N.W.2d 386 (Mich. 2004) ...........................................6

*Allen v. McCurry*, 449 U.S. 90 (1980) ......................................................5

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ...........................3

*Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812 (6th Cir. 2010) ........ 4, 5

*Casias v. Wal-Mart Stores, Inc.,* 695 F.3d 428 (6th Cir. 2012)..............10

*Cent. Home Health Care Servs., Inc. v. Progressive Michigan Ins. Co.,* No. 364653, 2024 WL 1221462 (Mich. Ct. App. Mar. 21, 2024) ..................................................................................................12

*Daunt v. Benson*, 956 F.3d 396 (6th Cir. 2020) .......................................4

*Kennedy v. Benson*, No. 24-1799, 2024 WL 4327046 (6th Cir. Sept. 27, 2024) ................................................................................... *passim*

*Kennedy v. Berger*, No. 24-2385, 2024 WL 4274191 (2d Cir. Sept. 18, 2024) .............................................................................................16

*Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401 (Mich. 2022)........................................................................6

*Nickola v. MIC Gen. Ins. Co.*, 894 N.W.2d 552 (Mich. 2017) ................12

*Open Stores in Howell Committee v. City of Howell*, No. 372499, 2024 WL 4270962 (Mich. Ct. App. Sept. 20, 2024)..............................11

**Statutes**

Mich. Comp. Laws § 168.646a(2) ...........................................................11

Mich. Comp. Laws § 168.648........................................................ 7, 8, 10

Mich. Comp. Laws § 168.650......................................................................10

ii

Mich. Comp. Laws § 168.842(5) ...................................................................9

**Rules**

Fed. R. App. P. 35 .......................................................................................3

## INTRODUCTION

This petition is not only wrong on the law, it fails entirely to address the impact the requested injunction would have on the Secretary of State, local election administrators, and the public as a whole.

The panel issued its decision affirming the denial of preliminary injunctive relief on September 27, 2024, in which it specifically recognized the harms that Michigan Secretary of State Jocelyn Benson—and the public as a whole—would incur as a result of the injunction belatedly-sought by Robert F. Kennedy, Jr.  Even at that time, absentee ballots were already being distributed and voters had begun to return their voted ballots.  That process continued for another week before Kennedy filed this petition, but the petition does not even address the effects of his requested injunction—or of his continued and unjustifiable delay in asserting his legal claims.

Instead, Kennedy's petition relies upon two arguments: (1) the panel's decision conflicts with Sixth Circuit and Supreme Court precedent regarding res judicata, and (2) the panel's decision creates

1

issues of exceptional importance because it violates Michigan state law. Neither argument has merit.

First, Kennedy incorrectly argues that the panel's decision "contravenes United States Supreme Court and Sixth Circuit precedent and creates a new standard with respect to the application of res judicata," but that claim is at odds with long-established precedent holding that res judicata is governed by state—not federal—law. (Doc. 11, Petition, p 13.)

Second, Kennedy argues that the panel "effectively invalidates MCL § 168.648," the state law that creates a notice requirement for the Secretary of State's communication of offices to be elected to county clerks. (Doc. 11, Petition, p 9.) But the panel did no such thing, and instead merely recognized—correctly—that Kennedy could and should have raised the claims in his federal complaint as part of his earlier state court action.

For these reasons and for those stated fully in the Secretary's principal brief, the arguments presented in the petition fail to demonstrate any compelling reason to grant rehearing en banc. The petition should be denied.

# ARGUMENT

## I. The petition for rehearing en banc should be denied where the panel did not err in affirming the denial of Kennedy's motion for a preliminary injunction.

An en banc hearing "is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance."  Fed. R. App. P. 35.  This is a high hurdle, and Kennedy has not met either standard.  Nor has he established any other reason for granting such relief.

### A. The panel did not misapply any precedent in concluding that Kennedy was unlikely to succeed on the merits of his claims where his claims were barred by the doctrine of res judicata.

Here, the panel properly weighed the four requisite factors for granting injunctive relief: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."  *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).  The panel also correctly recognized that its review of a preliminary injunction order is

"for abuse of discretion, subjecting factual findings to clear-error review and examining legal conclusions de novo." *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020) (citation omitted).

In his petition, Kennedy addresses only one factor—the likelihood of success on the merits. He argues that in assessing this factor against him, the panel erred in concluding that his claims were barred by res judicata. He suggests the panel's application of that doctrine was inconsistent with precedent. But Kennedy's treatment of that argument is brief, spanning roughly two pages in his petition. (Doc. 11, Petition, pp 13-15.) And he fails to demonstrate that the panel's decision conflicts with settled precedent on res judicata.

Sixth Circuit and Supreme Court precedent on the doctrine of res judicata do not control this dispute—instead, state law controls. As the panel properly held, "[t]his Court looks to the state law where 'Plaintiff's prior litigation took place'—in this case, Michigan, 'which employs a 'broad view of res judicata.' " *Kennedy v. Benson*, No. 24-1799, 2024 WL 4327046, at *2 (6th Cir. Sept. 27, 2024) (citing *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 817 (6th Cir. 2010)). The panel's deference to state law is rooted in settled precedent, as the U.S.

4

Supreme Court has held that "Congress has specifically required all federal courts to give preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738.)

Moreover, the panel did not misapply the law in its decision. The panel properly applied Michigan state precedent on res judicata and held that it "applies to each of Plaintiff's claims, so the Michigan Supreme Court's judgment precludes Plaintiff's federal complaint." *Kennedy*, 2024 WL 4327046, at *3.

While Kennedy may claim that the panel failed to consider whether the doctrine of res judicata applies to cases involving a "new, albeit similar injury," (Doc. 11, Petition, p 13), that is not an issue of Sixth Circuit or Supreme Court precedent. Rather, that is an issue of state law. *Buck*, 597 F.3d at 817. Notably, Kennedy's petition does not identify any conflicting Michigan precedent concerning res judicata. And the panel properly applied that Michigan state precedent on res judicata to dispose of Kennedy's self-described "similar injury." (Doc. 11, Petition, p 13).

5

Applying Michigan state law, the panel explained that "res judicata 'bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'" *Kennedy*, 2024 WL 4327046, at *2 (quoting *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004)). As the panel correctly held, "Plaintiff points only to new legal theories, not to a change of facts that occurred after he filed his first lawsuit." *Id.* at *4.

In particular, Kennedy's petition fails to contend with the three conditions of Michigan's res judicata law: a claim is barred if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 405 (Mich. 2022). The panel properly considered all three conditions and held that Kennedy's claims are barred by the state's doctrine. *Kennedy*, 2024 WL 4327046, at *3-4.

Because all of Kennedy's claims are barred by res judicata, the panel properly held that he was unlikely to succeed on the merits.

6

*Kennedy*, 2024 WL 4327046, at *4. The petition for rehearing does not
pose any new questions or issues of res judicata. Instead, Kennedy
relies almost entirely on his theory (which was not clearly articulated in
the district court below) that the Secretary of State "violated the law"
by "recertifying" Kennedy as a candidate. However, that argument also
fails.

> **B.    The panel's conclusion that Kennedy was unlikely to
>         succeed on the merits of his claims did not create any
>         issues of exceptional importance because it did not
>         violate state law.**

Kennedy argues that his appeal of the denial of the preliminary
injunction involves questions of exceptional importance because the
panel "ignored crucial facts" about the application of state law, Mich.
Comp. Laws § 168.648. (Doc. 11, Petition, p 10.) In short, Kennedy
suggests that the text of the statute forbade the Secretary of State from
updating the list of offices to be elected to include Kennedy, despite the
fact she did so in compliance with the Michigan Supreme Court's order
concluding that Kennedy should not have been removed from the ballot.

First, Kennedy, as the district court and dissent did,
miscomprehends the state law at issue. While the term "certification" is

sometimes used informally when referring to the Secretary's action,

Mich. Comp. Laws § 168.648 does not direct the Secretary to "certify" a

list of candidates.  (Doc. 11, Petition, p 11.)  Rather, the law creates a

notice requirement for the Secretary that does not foreclose later

changes based on updated information:

> The secretary of state, **at least 60 days and not more than 90 days** preceding any regular state or district primary or election, shall send to the county clerk of each county **a notice in writing of such primary or election, specifying in such notice the federal, state and district offices for which candidates are to be nominated or elected**, as well as any constitutional amendments and questions to be submitted thereat.

Mich. Comp. Laws § 168.648 (emphasis added).  Indeed, the statute

only requires the notice to include the "offices"—not the specific

candidates.  To be clear, the Secretary usually does transmit the names

of candidates to the clerks.  But the statute merely creates a window for

providing notice to county clerks of the election.  As the Director of

Elections explained in his affidavit below, this notice signals the

commencement of the ballot-printing process.  (R. 8-5, Page ID # 156,

Def's Ex. D, Brater Aff., ¶¶ 13-14.)  So, it is important that the notice be

as accurate and complete as possible, but there is no statutory bar to

making necessary changes.

Secretary Benson met the 60-day deadline on September 6, 2024, when she sent the required notice to the county clerks listing the offices to be elected as well as the names of candidates entitled to placement on the ballot at that time. (*Id.*, Page ID # 157, Def's Ex. D, Brater Aff., ¶ 15.) On September 9, 2024, after the Michigan Supreme Court's order reversing the lower court's determination was announced, the Bureau of Elections "sent an updated candidate listing to the County Clerks the same day at 3:45 p.m." (R. 8-5, Page ID # 157, Def's Ex. D, Brater Aff., ¶ 16.)

Kennedy argues, in keeping with the dissent, that the Secretary's updated notice was unlawful. (Doc. 11, Petition, p 11.) Kennedy characterizes the law as though it calls for a final certification akin to the final certification of election results performed by the Boards of State Canvassers. *See* Mich. Comp. Laws § 168.842(5) (amended) ("It is the . . . duty of the board of state canvassers . . . to certify election results based solely on the certified statements of votes from counties.").

But the text of the statute does not forbid the Secretary from updating a timely notice in accordance with a court order. Mich. Comp.

Laws § 168.648.  In interpreting a Michigan statute, this Court must

apply Michigan principles:

> Under Michigan law, courts interpreting statutes "must
> review the entire law itself in order to arrive at the
> legislative intent and provide an harmonious whole. . . .
> When the "language used is clear and the meaning of the
> words chosen is unambiguous, a common-sense reading of
> the provision will suffice, and no interpretation is
> necessary." *People v. Lee,* [ ] 526 N.W.2d 882, 885 (1994)
> (quoting *Karl v. Bryant Air Conditioning,* [ ] 331 N.W.2d 456
> (1982)) (internal quotation marks and citations omitted).
> Only if the "statute is of doubtful meaning or ambiguous, is
> the 'door . . . open to a judicial determination of the
> legislative intent.' " *Id.* (quoting *Knapp v. Palmer,* [ ] 37
> N.W.2d 679, 681 (1949)).

*Casias v. Wal-Mart Stores, Inc.,* 695 F.3d 428, 435 (6th Cir. 2012).

Nothing in the plain text of § 648 prohibits the Secretary from

advising county clerks of a change to the list of general election

candidates brought about by a court decision.  Again, the statute simply

sets the earliest and latest date by which notice must be provided.

Moreover, a later statute within the same division contemplates that

additional notices might be required.  Section 650, Mich. Comp. Laws §

168.650, provides that "[i]f, after such notices have been sent, a vacancy

shall occur in any office which by law is required to be filled at such

election, the secretary of state shall send to each county clerk an

additional notice specifying the office in which such vacancy exists and that such vacancy will be filled at the next general election." And, in fact, changes to candidate lists after notice has been sent due to litigation occurs fairly often, although generally not with respect to a statewide candidate. For example, just weeks ago, on September 18, 2024, a Michigan state court ordered relief in the form of altering a ballot after the applicable statutory notice deadline had passed, and its order was affirmed by the Michigan Court of Appeals. *Open Stores in Howell Committee v. City of Howell*, No. 372499, 2024 WL 4270962, at *5 (Mich. Ct. App. Sept. 20, 2024). In that case, the notice deadline in question was provided by Mich. Comp. Laws § 168.646a(2), and the court ordered election officials to update a ballot after the initial statutory notice deadline had passed. The same sequence of events happened in Kennedy's case, when the Michigan Supreme Court ordered the Secretary to revise her initial notice on September 9, 2024.

Moreover, Kennedy is wrong to assert that the panel's decision "effectively invalidates MCL § 168.648." (Doc. 11, Petition, p 9.) Rather, Kennedy is reading a limitation into § 648 which simply is not there, contrary to statutory construction principles. *Nickola v. MIC*

*Gen. Ins. Co.*, 894 N.W.2d 552, 556 (Mich. 2017) ("[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.") (cleaned up); *Cent. Home Health Care Servs., Inc. v. Progressive Mich. Ins. Co.,* No. 364653, 2024 WL 1221462, at *5 (Mich. Ct. App. Mar. 21, 2024) ("Plaintiff asks this Court to read a limitation into the statutory definition that does not exist.").

Second, Kennedy is also wrong to assert that the Michigan Supreme Court's order did not order or compel the Secretary to take action. Kennedy, citing the dissent to the panel's decision, asserts that the Secretary's actions on September 9, 2024, were "unilateral, unauthorized, and likely illegal" and that she "has not identified any statute, rule, or court order that required her—or even permitted her— to add a candidate to the ballot after the statutory deadline." (Doc. 11, Petition, p 11, citing *Kennedy*, 2024 WL 4327046, at *5, *6 (McKeague, J., dissenting).) But the procedural history of this dispute clarifies this matter.

On September 3, 2024, the Michigan Court of Claims denied Kennedy's request to be removed from the ballot: "IT IS SO ORDERED

12

that . . . plaintiff's August 30, 2024 motions for immediate mandamus relief, and temporary restraining order/injunction, are denied, and plaintiff's verified complaint is dismissed with prejudice." (R. 1-4, Page ID # 31.)

On September 6, 2024, the Michigan Court of Appeals reversed that order and remanded "for entry of an order granting immediate mandamus relief to plaintiff." (R. 8-6, Page ID # 169-173.) That same day, the Court of Claims, on remand, issued an order stating: "IT IS ORDERED that Plaintiff Robert F. Kennedy, Jr., is hereby awarded mandamus relief directing the secretary of state to remove plaintiff's name from the ballot. . . ." (R. 1-5, Page ID # 36.) The Secretary complied with this order on September 6 by not including Kennedy's name on the notice. (R. 8-5, Page ID # 157, Def's Ex. D, Brater Aff., ¶ 15.) The Secretary filed an emergency appeal with the Michigan Supreme Court the same day.

On September 9, 2024, the Michigan Supreme Court issued its order, in which it stated: "On order of the Court, . . . we REVERSE the judgment of the Court of Appeals and VACATE the opinion and order of the Court of Claims except for that part of the Court of Claims order

denying the motion for immediate mandamus relief and temporary restraining order/injunction and dismissing the complaint with prejudice, which we REINSTATE." (R. 1-6, Page ID # 38.)

This procedural history shows that the Michigan Supreme Court did two things on September 9, 2024: (1) it ordered reinstatement of the Court of Claim's original order from September 3, denying Kennedy relief, and (2) it reversed the Court of Appeals' order from September 6, which had directed the Secretary to remove Kennedy from the ballot. The only reason Kennedy was not included in the Secretary's September 6 notice was because there were court orders enjoining her from doing so. In reversing the Court of Appeals' order and reinstating the Court of Claims order, the Michigan Supreme Court's order had the effect of undoing the relief that had been granted and effectuated on September 6. Accordingly, the Secretary complied with the Michigan Supreme Court's final order and "sent an updated candidate listing to the County Clerks the same day at 3:45 p.m." (R. 8-5, Page ID # 157, Def's Ex. D, Brater Aff., ¶ 16.) To have done otherwise would have been to ignore the Michigan Supreme Court's order and render it a nullity.

It is certainly within the Michigan Supreme Court's authority to issue orders shortly after the initial notice deadline had passed, and it was within the Secretary's authority to communicate an update to her initial timely notice.  Kennedy's tortured construction of the procedural history reads an absurdity into the Supreme Court's order.  If the Michigan Supreme Court intended its decision to have no effect, it would have held that the entire dispute was moot rather than reversing the lower court's order.

For these reasons, Kennedy has also failed to show that the panel's decision created any issues of exceptional importance worthy of en banc review.

### C.    The panel correctly weighed the remaining injunction factors, all of which weighed heavily in favor of the State, and Kennedy does not argue to the contrary.

Importantly, Kennedy fails entirely to demonstrate—or even argue—that the panel erred in weighing the other injunction factors in favor of the State, particularly the balance of harms and public interest factors.

First, the panel correctly held that Kennedy failed to show any irreparable injury.  In fact, the panel pointedly observed that Kennedy's

"campaign committee has asked to be kept on the ballot in New York, claiming irreparable injury if he's taken off." *Kennedy*, 2024 WL 4327046, at *4 (citing *Kennedy v. Berger*, No. 24-2385, 2024 WL 4274191 (2d Cir. Sept. 18, 2024)). As the panel explained, Kennedy never explained "how excluding [him] from the ballot could protect him from irreparable reputational damage in one state but cause the same damage in another." *Id.* Kennedy makes no attempt to reconcile this contradiction in his petition.

Second, and more importantly, as the panel also recognized, the harm to the State and public interest factors weighed in favor of denying injunctive relief. The harm posed by Kennedy's requested injunction was great, and those harms have only grown greater in the weeks since the panel announced its decision. As the panel explained, "[t]he public interest is perhaps the most paramount here." *Id.* at *5. The panel correctly held that the District Court's findings of fact about the "orderly administration of the upcoming election" were proper and left them undisturbed. *Id.* (citations omitted). Citing those findings of fact, the panel explained that "[t]he ballots are now printed" and

16

"[c]hanging the ballot at this late date would be even more disruptive." *Id.* at *4, *5.

Moreover, absentee voting has been in progress for weeks, having begun for all voters on September 26, 2024, while military and overseas voters began receiving ballots on September 21, 2024. *Id.* at *5. Voting has continued since the panel decision, and Election Day has only drawn closer. Simply put, the election is already underway, and voters are already voting. There is no way to "unring the bell at this juncture without great harm to voting rights and the public's interest in fair and efficient election administration," as the panel aptly explained. *Id.*

The panel's reasoning concerning the public harm is all the more compelling as the election has continued. That makes it all the more baffling why Kennedy failed to bring this petition for rehearing sooner. This petition—if it was to be brought at all—should have been filed no later than September 30, the Monday following the Panel's decision. Instead, true to every action in this and the state-court litigation, Kennedy dithered, taking no action until October 3. Even then, he failed to seek to expedite this matter until the Court issued its briefing letter on October 7, which would have had the Secretary's response due

on October 21.  Only then did Kennedy move to expedite and urge that the Secretary's response be required by 5 p.m. on October 10—less than three days later.  Once again, Kennedy expects others to carry the burden caused by his delays.[1]

In his petition, Kennedy fails to contend with the panel's holdings on the balance of equities.  The only attention he gives this issue is to assert that "meaningful relief" is not impossible or impractical because one other court, a state court outside of the Sixth Circuit, "held that prominent notices be placed at each affected polling place."  (Doc. 11, Petition, p 12.)  But Kennedy never requested this relief below, or even in his appeal brief.  He cannot request new relief at this stage in litigation.  And, even if this relief was available, it would not tilt the balance of equities in Kennedy's favor because such relief is impossible for the State to administer—especially at this late stage.

---

[1] It took Kennedy two days to file his notice of appeal from the District Court's decision, or until September 20, and then another three days for Kennedy to file his brief on appeal to this Court, or until September 23. Later in the day on September 24, this Court instructed the State to file its brief the very next day, September 25, by 5:00 p.m.

Kennedy fails to argue, let alone demonstrate, that the balance of harms and public interest factors weigh in his favor, and so he cannot be entitled to the injunctive relief he seeks.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the petition for rehearing en banc should be denied.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant-
Appellee Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: meingasth@michigan.gov
(P55439)

Dated: October 10, 2024

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 3,748 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Times New Roman.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant-
Appellee Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
(P55439)

## CERTIFICATE OF SERVICE

I certify that on October 10, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant-
Appellee Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
(P55439)

21